**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

DWIGHT D. YORK

       *Plaintiff,*                      Civ. No. 1:21-cv-01503-MEH

*vs.*

THE FEDERAL BUREAU OF PRISONS,
ANDREW MATEVOUSIAN, in his Individual and
Official Capacity; J. FOX, in his Individual and Official Capacity;
KERRI LEWIS-HICKS, in her Individual and Official Capacity;
A. TUTTOILMONDO, in his Official Capacity; C. SYNSVOLL, in his
Official Capacity; and, M. SANTISTEVAN, in his Individual and
Official Capacity, Collectively.

       *Defendants.*

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

---

Plaintiff filed a complaint alleging that Defendants have violated his First Amendment, Fifth Amendment, Sixth Amendment, and Eighth Amendment rights because of his treatment during incarceration. Defendants filed a Rule 12(b)(6) motion to dismiss that alleges Plaintiff's claims are moot. As explained in this response, however, Plaintiff's claims are not moot because he continues to suffer unconstitutional restrictions and the violations are capable of repetition while evading review and the voluntary cessation exception to the mootness review applies.

In addition, although Defendants claim the statute of limitations bars Plaintiff's complaint, Defendants are incorrect, in that, Plaintiff's claims are not statutorily barred because he has suffered at least one unconstitutional deprivation within the statutory filing period and Defendants' conduct as a whole can be considered a single course of conduct under the continuing violation

1

doctrine. Moreover, under the favorable standard this court must employ when construing Plaintiff's complaint, he has, indeed, stated plausible claims for relief and this court should deny Defendants' motion to dismiss in its entirety.

## BACKGROUND

Plaintiff, Dwight York, is a 76-year-old prisoner of the United States of America in the custody of the Federal Bureau of Prisons ("BOP") who was sentenced to a prison term of 135 years in 2004. He is currently confined at the USP Florence ADMAX U.S. Penitentiary ("ADX" or "USP ADMAX"), where he has been continually subjected to solitary confinement since 2006. ADX's policy requires Plaintiff be provided out-of-cell exercise five days a week but due to staff shortages, Plaintiff frequently was given only two hours of exercise a week, alone in a small cage (10" by 10"), with little or no exercise equipment. Plaintiff has often gone weeks without the benefit of the sun or exercise, or having contact with the outside world.

Plaintiff's family and legal visitations and correspondence privileges were restricted in 2015 and were further restricted indefinitely in 2016. Although within two months of the initiation of this case, Defendants spontaneously lifted some of those restrictions without explanation. His ability to correspond and communicate with the undersigned attorney was also restricted and she was denied access to Plaintiff to assist him with a variety of matters, including the foregoing litigation and pending immigration and international issues related to Plaintiff's status as a Liberian Diplomat, (Diplomatic Number #003828-04).

Plaintiff is a practitioner of Sabeanism, which is a religious practice that originated in ancient Arabia and is presumed to be older than Christianity or Islam.  While at ADX, Plaintiff has been denied the right to practice his religion because, among other things, Defendants have

restricted his ability to meet with his pastor, congregate with others who practice his religion, and have confiscated his Holy Book and other personal items.

In addition, Plaintiff suffers from Chronic Acute Angioedema, characterized by rapid swelling, of the area beneath the skin or mucosa. This condition exacerbates the effect of the already restrictive conditions he faces and can be triggered by stressful circumstances, causing airway obstruction.

Additional relevant facts are discussed as needed within the body of this response.

## I.   Plaintiff's claims are not moot because he continues to suffer unconstitutional restrictions; Defendants cannot simply moot a case by ceasing its unlawful conduct once sued and the issues here are capable of repetition while evading review.

Defendants maintain that some of Plaintiff's claims are moot. *See* Def's Mot. at 1. Specifically, Defendants argue that Claim 1 and Claims 2 to 4 are moot because visitation and communication restrictions that were in place at the time Plaintiff's original complaint was filed have been lifted. *See* Def's Mot. at 7, 19, 33. To the contrary, however, Plaintiff continues to experience restrictions on his ability to communicate with Counsel, engage in the free exercise of the religion of his choice, and enjoy social communications and visits. And what is more, the voluntary cessation and capable of repetition while evading review exceptions apply to bar application of the mootness rule.

As discussed below, some of Plaintiff's complained of restrictions were lifted and or modified only during the pendency of this action and suspiciously, merely within two months of Defendants' Motion to Dismiss. Further, because the BOP has expansive control to apply, increase, modify, or remove the challenged restrictions, which they have historically done throughout Plaintiff's imprisonment and is shown by a number of exhibits, they can be in short duration and

may evade review prior to the completion of litigation while there is the reasonable expectation Plaintiff will again endure the unconstitutional treatment.

Under Article III of the Constitution federal courts may decide only "Cases" or Controversies." U.S. Const. art. III, § 2; *see Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). This requirement is present through each stage of federal judicial proceedings and requires that the party seeking relief has sustained or been threatened with an actual injury traceable to the responding party. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *United States v. Vera-Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007). Once a controversy stops being present, the action is moot and federal courts lack jurisdiction to adjudicate the issue. *United States v. Seminole Nation of Oklahoma*, 321 F.3d 939, 943 (10th Cir.2002) (citation omitted).

"A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir.1997); *see McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir.1996) ("Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.").

A party, such as Defendants here, who argue in favor of mootness because of discontinued conduct carry the burden to show that the case is moot. *See United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (explaining the "burden of persuasion [of mootness] . . . rests upon those in [the proponent of mootness's] shoes"); *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) ("[I]t falls upon the BOP to carry [the] burden" of showing mootness). Additionally, it must meet the "heavy burden" to demonstrate that the voluntary cessation

exception to mootness does not apply. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) (quotations omitted).

A case is not moot when the issues under review (1) "evade review" because "the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration," and (2) are "capable of repetition," such that "there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Fleming v. Gutierrez*, 785 F.3d 442, 446 (10th Cir. 2015) (internal quotation marks and citation omitted); *see Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432, 434 (10th Cir.1978) (explaining that the capable-of-repetition exception is a "special circumstance[s] whereby an action will not be dismissed as moot even though the party seeking relief is no longer affected by the action complained of").

In addition, under the "voluntary cessation" doctrine, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). This exception to the mootness rule "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resum[e] the illegal conduct," or evade judicial review . . . by temporarily altering questionable behavior." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 (10th Cir. 2019) (internal quotation marks and citations omitted). To withstand the voluntary cessation doctrine, the party arguing mootness must "undertake changes that are permanent in nature and foreclose a reasonable chance of recurrence of the challenged conduct." *Id.* (internal quotation marks and citation omitted).

In this case, Plaintiff's claims are not moot because he continues to suffer unconstitutional restrictions on his ability to correspond confidentially unfettered with Counsel, receive social visits, and engage in the free exercise of his religion. Even though Defendants cite the Amendment

of Communication Restriction letter of December 2, 2021 as the ground for their mootness claim, the letter specifically continued certain restrictions on Plaintiff's ability to communicate freely, and stated that "[y]our general correspondence restrictions have been reviewed pursuant to 28 C.F.R § 540.15 and a continuance of the current restrictions is necessary[.]" Def's Mot. at 6; Ex. K, 12/2/2021, Amendment of Communications Restrictions, at 2. Because Defendants' corrective actions pursuant to Plaintiff filing his Complaint "do[ ] not fully comport with the relief sought," they are insufficient. *Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 476 (10th Cir. 1979). Notwithstanding the December 2nd correspondence from Defendants lifting some of the social restrictions, Plaintiff has not received a social visit since 2015.

Therefore, the voluntary cessation doctrine applies since the changes are not permanent and there is a reasonable chance of recurrence. Notably, this letter was issued about six years after the initiation of restrictions on Plaintiff and after he filed his complaint. *See* Compl. at 1; Def's Ex. H. Defendants' Motion to Dismiss, meanwhile, was filed in close proximity to the December 2nd letter, on January 27, 2022, a mere two-month time difference. *See* Def's Mot. at 1.

Alternatively, this case presents issues under both exceptions to the mootness rule discussed above. First, under the voluntary cessation exception, Defendants have not carried their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Prison Legal News*, 944 F.3d at 881. Indeed, some restrictions were only lifted during the pendency of this action and suspiciously close in time to the filing of Defendants' motion to dismiss, which strongly suggests that the cessation was a calculated sham and disingenuously orchestrated. This is especially so considering Plaintiff endured approximately 6 years of alienating and harmful restrictions, and, without explanation,

the restrictions were reduced after the filing of the complaint challenging those very restrictions. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.").

Second, this case is not moot because it falls within the category of cases that are capable of repetition while evading review. The challenged actions—the unconstitutional restrictions placed on Plaintiff—were in their duration too short to be fully litigated prior to their cessation. This is established by Defendants' reduction of certain restrictions while this lawsuit was pending. Plaintiff filed his Complaint on June 3, 2021, yet six months later and well before the expected conclusion time of the instant litigation, the BOP modified some of Plaintiff's restrictions. Because the duration of BOP's restrictions on Plaintiff are exclusively within the control of BOP, and BOP may arbitrarily reduce or cease restrictions at will to avoid liability, the challenged actions in this case were too short in their duration to be fully litigated prior to their reduction or cessation.

Stated differently, BOP's decision regarding the restrictions is temporary and, as stated in the December 2, 2021 letter, are subject to review in six months, which means there is an inherent problem of limited duration. *See Affiliated Ute Citizens of Utah v. Ute Indian Tribe of Uintah and Ouray Reservation*, 22 F.3d 254, 256 n. 1 (10th Cir. 1994) (discussing that when a case has an "inherent problem of limited duration" the case may evade review.). Thus, the restrictions may expire or be changed before the litigation comes to full and complete closure. *Cf. Seminole Nation*, 321 F.3d 939, 943 (10th Cir. 2002) (concluding that challenges to temporary closure orders issued by the Chairman of the National Indian Gaming Commission evade review because the temporary orders expire or are replaced by subsequent orders before the challenges can be fully litigated.).

Furthermore, because of the nature of BOP's unfettered control of the challenged restrictions, there is a reasonable expectation that Plaintiff will be subjected to the same challenged restrictions again. *See Turner v. Rogers*, 564 U.S. 431, 439-40 (2011). Therefore, the issues in this case are capable of repetition while evading review and this court should reject Defendants' claims of mootness.

## II.   Plaintiff's claims are not barred by the statute of limitations because he suffered at least one unconstitutional deprivation within the statutory filing period and Defendants' conduct as a whole can be considered a single course of conduct under the continuing violation doctrine.

Defendants argue that Plaintiff's claims are barred by Colorado's two-year statute of limitations. *See Aldrich v. McCulloch Properties*, Inc., 627 F.2d 1036, 1041 (10th Cir. 1980) ("Under both Colorado and federal law, the limitations period begins to run when the aggrieved party discovers, or should have discovered by the exercise of reasonable diligence, the facts constituting the fraud."). Defendants' argument fails because Plaintiff suffered at least one unconstitutional deprivation within the statutory filing period, and the continuing violation doctrine applies. *See* Defs' Mot. at 22, 27, 30-31.

Although constitutional violation claims generally accrue when the plaintiff knows or should know of the violations, "[a] continuing violation is occasioned by continual unlawful acts[.]" *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). The continuing violation doctrine "permit[s] a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents are sufficiently related and thereby constitute a continuing pattern of wrongful conduct." *Fogle v. Pierson*, No. 05-cv-01211-MSK-CBS, 2008 WL 821803 at *5 (D. Colo. Mar. 26, 2008) (citation and quotation omitted). For the continuing violations doctrine to apply, there must be at least one

wrongful act within the statutory filing period. *See McCormick v. Farrar*, 147 Fed.Appx. 716, 720 (10th Cir. 2005).

"A single violation continues over an extended period of time when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *Sierra Club v. Okla. Gas Elec. Co.*, 816 F.3d 666, 672 (10th Cir. 2016) (internal quotation marks and citations omitted). "In other words, one violation continues when the conduct as a whole can be considered as a single course of conduct." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff filed his Complaint for Declaratory Relief, Injunctive Relief & Damages on June 3, 2021. *See* Compl. at 1. At least one injurious act for each of his claims occurred within the relevant statutory period. Regarding his Sixth Amendment right of access to the court claim, Plaintiff alleged Defendants returned mail labeled "Special Legal Mail" to counsel on June 26, 2019, and continued to interfere with Plaintiff's right to access the courts in numerous ways evidenced herein. Compl. at ¶¶ 175-176. As to Plaintiffs' Due Process and Equal Protections claims, Defendants confiscated books from Plaintiff on June 17, June 19, and August 20, 2019, even though other similarly situated inmates were permitted to listen to broadcasts of one of the authors and one of the books, "The Prophet" by Kahlil Gibran, is on the ADX Chapel Library book list for inmates. *See* Compl. at ¶¶ 162, 166-168, 179.

Further, with respect to his other claims, Plaintiff specifically alleged Defendant Matevousian wrongfully rejected a letter from his daughter, Hajar Eatman, on June 24, 2019, even though Plaintiff was approved to correspond with her and that the deprivation was retaliation. Compl. at ¶¶ 170, 172. Moreover, Plaintiff submits the restrictions on his ability to practice the

religion of his choice continue to this day and, therefore, this violation falls within the limitations period. He further submits that the same holds true for the cruel and unusual punishment he suffers as a result of the conditions of confinement he is under, which continues indefinitely, and presents atypical and significant hardships.

Even though there were admittedly some violations outside the statutory limitations period, Defendants conveniently cited those same events to bolster their position that Plaintiff's restrictions were warranted. Nonetheless, Defendants' conduct represents an unlawful continuous course of conduct under the continuing violations doctrine. For one, the interference with his legal mail and correspondence with his attorney demonstrates a continuous pattern of wrongful conduct in terms of the restrictions on his ability to access the courts.

And because Defendants conduct of restricting Plaintiff's access to the courts and violating his First and Fifth Amendment rights of association, free exercise of religion, to be free from retaliation, and due process and equal protection collectively constitute one act, Plaintiff's complaint is properly before the court and should continue as such, giving this court the ability to look backward to assess the cumulative effect of Defendants' wrongs. *See Burkley v. Correctional Healthcare Management of Oklahoma, Inc.*, 141 Fed.Appx. 714, 716 (10th Cir.2005) ("The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period.").

### III. This court should deny Defendants Motion to Dismiss because Plaintiff has alleged facts sufficient to support plausible claims.

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P Rule 12(b)(6). However, "a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007). The allegations in the complaint, nevertheless, "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

"[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 1965 (internal citations and quotations omitted). There is no requirement of "heightened fact pleadings of specifics," but merely enough factual allegations sufficient to state a plausible claim for relief. *Id.* A complaint satisfies this plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

### A.  Claim 1 – Sixth Amendment and Access to the Courts.

Defendants oversimplify Plaintiff's argument that his right to access the courts is being violated and merely contend that his Sixth Amendment right does not apply in a civil case. Defs' Mot. at 32-33. Plaintiff, however, clearly stated in his complaint Defendants' actions were interfering with his correspondence and visits with his attorney and have caused "irreparable harm

to [his] ability to access the courts and promote legal strategies." Compl. at ¶¶ 2, 198, 200. As detailed below, Plaintiff has alleged facts that make out a plausible claim for relief because the denial and delay of his right of access to the courts has prejudiced him.

It is well-established that "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), overruled in part on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see Bounds* v. *Smith*, 430 U.S. 817 (1977) (holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000) (holding that inmates undeniably have a constitutional right of access to the courts.). Inmates must have a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356-57 (1996). "'[M]eaningful access to the courts is the touchstone.'" *Id.* at 351 (internal citation omitted).

The Tenth Circuit "has long recognized that, like all persons, 'inmates have a constitutional right to "adequate, effective, and meaningful" access to the courts and that there are "affirmative obligations" to assure all inmates such access.'" *Love v. Summit County*, 776 F.2d 908, 911 (10th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980)). The right of access to the courts is secured by the First Amendment's petition clause, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008); the Sixth Amendment, *Arney v. Simmons*, 26 F. Supp. 2d 1288 (D. Kan. 1998); and, pursuant to the Fourteenth Amendment, the privileges and immunities and due process clauses. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner*, 482 U.S. at 84. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89; *see Lewis*, 518 U.S. at 351 (stating that the inmate must establish the interference with the right to legal counsel or assistance "frustrated or impeded" a legal claim). "To state a claim for denial of [the] right [of access to courts], [a plaintiff] must show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (quotations omitted).

In this case, Plaintiff was denied legal visits from his counsel and barred from having necessary and confidential legal communications and correspondence. This interference with his right to counsel and access to the courts has frustrated and impeded him in pursuing actions to protect his constitutional rights. As a result of the denial and delay, the instant litigation has been frustrated and prolonged, which in turn has led to the continuation of the unconstitutional violations Plaintiff faces.

This demonstrates the prejudice and irreparable harm Plaintiff has suffered. Defendants' own arguments regarding the running of the statute of limitations admittedly establishes the prejudice Plaintiff faced in accessing the courts for this litigation and the immigration litigation he sought to pursue in 2018 related to Plaintiff's Liberian Diplomatic status. Subsequently, Counsel was denied a legal visit, asked to leave the premises, or be escorted off the property, and Defendant Matevousian summarily revoked all legal privileges. Defendants argue many of Plaintiffs' claims are time barred; however, any delay in pursuing this litigation is the result of Plaintiff's inability to visit and correspond with his attorney. Defs' Mot. at 7, 22, 27, 31*Cf. Trujillo*, 465 F.3d at 1226.

Defendants do not argue that any legitimate penal interest was furthered by the restrictions on Plaintiff's ability to communicate and correspond with his attorney. *See* Defs' Mot. at 32-33. But in any event, assuming they respond that Counsel attempted to enter ADX with "contraband," this "contraband" was paper, and the undersigned attorney admitted her inadvertent misapplication of BOP rules related to how paper was contraband. *See* Defs' Mot. at 4-5; Plaintiff's Ex. J. 11/28/2018 Broussard Response to Revocation of Privileges, at 3.

Such conduct hardly justified the denial of Plaintiff's constitutional right to access the courts or access to all privileged communication with Counsel of choice for such an elongated period of time. Furthermore, the undersigned attorney submits that there were alternatives available to Defendants that would not have offended Plaintiff's rights. For example, Defendants could have taken the document or Counsel could have left it in the locker. At this point in Counsel's attempt to visit Plaintiff, she had not had any contact with Plaintiff or any other inmate, and there was no threat to the security of the facility or staff.

Moreover, to the extent Defendants noted that revoking Counsel's telephone privileges was "necessary to the security of this facility", Defendants neglected to articulate exactly how facility security was compromised. *See* Defs' Mot. at 4-5; Def's Ex. G. 10/26/2021 True Letter To Broussard Re: Revocation of Privileges. Nor did Defendants specifically indicate or show that Plaintiff communicated with others. Rather, the allegation was that a recording of the conversation was released to a third party, not that Plaintiff himself had any forbidden contact with people that were not on his approved list. *See* Defs' Ex. F, at 2-3; Plaintiff's Ex. K. Broussard Appeals to Regional Office at 1 &1-2. Further, when asked for strict proof of any wrongdoing on the part of Counsel, Defendants refused to comply with the reasonable request for evidence.

In sum, because Defendants restricted his visitations, communications, and correspondence with his attorney, Plaintiff's right to access the courts guaranteed by the Constitution was violated and he suffered prejudice in his ability to pursue litigation, which has frustrated and impeded his legal claims and ability to obtain relief.

**B.  Claim 2 – Fifth Amendment due process and equal protection claims**

Defendants argue that Plaintiff's due process and equal protection claims in Claim 2 fail because he has not alleged a plausible Fifth Amendment claim. Def's Mot. at 33. To the contrary, as established below, Plaintiff alleged sufficient facts to survive the Rule 12(b)(6) motion to dismiss under the favorable standard afforded to plaintiffs when district courts consider a motion to dismiss for failure to state a claim.

**i.  Due process**

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)). To make out a plausible claim for a violation of substantive due process, the plaintiff must allege (1) that there is a protected liberty or property interest that has been deprived, and (2) if so, whether the procedures followed were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

"In the prison context…protected liberty interests are at issue when the prison inmate is subjected to: (1) conditions that 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' or (2) disciplinary actions that 'inevitably affect the

duration of his sentence.'" *Marshall v. Morton*, 421 Fed.Appx. 832, 837 (10th Cir. 2011) (unpublished) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

To determine whether an "atypical and significant hardship" has been imposed, the Supreme Court has outlined a fact intensive inquiry into "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015) (citing *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005)).

Plaintiff specifically claimed that he suffered violations of his liberty interests that presented atypical and significant hardships. Compl. at ¶ 208. In particular, he alleged he had been indefinitely confined to ADX and denied access to his attorney. Compl. at ¶¶ 206, 208. Plaintiff further alleged that he had suffered equal protection violations because he was treated differently than similarly situated inmates by "being indeterminately confined to ADX, being treated disparately due to his religious beliefs and practices, being denied the practice of his religion as similarly situated inmates of other beliefs and practices, and being continuously restricted and isolated from family, unlike similarly situated inmates." Compl. at ¶ 206.

Plaintiff supported his claims with specific factual allegations. Among other things, he argued that he was being denied pastoral care through the minister of his choice; suffered restrictions to his correspondence and visitation privileges; interference with his legal mail and communicating with his lawyer; and was deprived of his Holy Book and other personal items, which included photo albums, books, and a Sudanese language book. Compl. at ¶¶ 63, 66, 70-71, 75-77, 87, 88, 93, 132, 162, 166, 186; Plaintiff's Ex. B. 12/14/18 Hicks Confiscation of Holy Book.

In addition, Defendant Matevousian refused to acknowledge Plaintiff's religion of choice and prevented him from possessing scriptures, Holy Books, photos related to Sabeanism, or congregating with other Sabean inmates. Compl. at ¶¶ 135-137. He also alleged that at the end of 2020, BOP interfered with a transfer from his personal inmate trust account funds to pay his attorney. Compl. at ¶¶ 190-193; Plaintiff's Ex. L. Notice of Encumbrance.

Although, many exhibits are not within the possession of the undersigned attorney due to the extended attorney/client restrictions, Plaintiff's factual allegations are supported by exhibits, herein, that clearly demonstrate the extended continuation of restrictions. *See also,* Plaintiff's Ex. A. Broussard/Weincek Emails. In particular, the documents denote that the general correspondence restrictions were "indefinite" and other restrictions appeared unconstitutional and indefinite as well.

For instance, a letter to Defendant Matevousian from the undersigned attorney dated November 28, 2018, concerning the additional attorney/client restrictions placed on her privileged communication with Plaintiff and a letter from Defendant Matevousian to the undersigned attorney dated July 31, 2018, where Defendant Matevousian prohibited legal correspondence with Plaintiff and extended the prohibition to all ADX inmates. Plaintiff suffered with respect to his inability to engage in privileged communications with his attorney. *See,* Plaintiff's Ex. J.; Plaintiff's Ex. H. Broussard/Matevousian Correspondences. The restrictions Plaintiff faces present an atypical and significant hardship because of the extreme and indefinite nature of the challenged restrictions.

Defendants do not assert a legitimate penological reason for deprivation of religious or other literature. Plaintiff has continually been subjected to solitary confinement for an indeterminate amount of time since 2006. Compl. ¶ 29. His restrictions include being confined to

his cell 23 hours a day for at least five days a week, and he interacts minimally or not at all with others. Compl. at ¶ 31.

Moreover, the denial of his legal mail and correspondence with his attorney implicate a liberty interest and Defendants have not established a legitimate penological interest in enforcing such restrictions. *Cf. Wardell*, 470 F.3d at 959 (analyzing a right to receive legal mail claim along with a the right to access courts). By impeding Plaintiff's communications with his attorney, Defendants have impeded Plaintiff's fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977).

The procedure available to redress these constitutional violations are clearly inadequate because Plaintiff continues to suffer these unconstitutional violations. Therefore, the magnitude of the restrictions and the indefinite nature of this treatment demonstrate that Plaintiff has been subjected to atypical and significant hardship. *Cf. Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (finding atypical and significant hardship where the inmate was subjected to indefinite solitary confinement, 24-hour lighting, minimal exercise, and disqualification from parole eligibility)."

### ii.  Equal Protection

With respect to Plaintiff's Equal Protection claims, "[a]n equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). "In order to sufficiently state an equal protection claim, a prisoner must show that (1) he is treated differently than a similarly situated inmate; (2) the different treatment burdens a fundamental right; and (3) the different treatment bears no rational relation to a legitimate penal interest." *Gibson v. Hall*, No. 10-cv-02929-BNB,

2010 WL 5387720, at *1 (D. Colo. Dec. 22, 2010) (citing *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 984 (8th Cir. 2004) (internal quotation marks and citation omitted)).

Here, Plaintiff made out a plausible claim for relief supported by his factual allegations because he is treated differently than similarly situated inmates in terms of their ability to practice their religions of choice. Defendant Matevousian refused to recognize Sabeanism as a congregation and denied Plaintiff the ability to congregate with other Sabean inmates, possess scripture, Holy Books, or photos related to Sabeanism. Compl. ¶¶ 134-137. As demonstrated by Defendants' Exhibit M, dated September 17, 2020, Defendant True issued a memorandum specifically stating inmates in K-B Unit who identify as Muslim are permitted to pray together for each Jumu'ah prayer on every Friday and are permitted to engage in brief discussions on faith-based matters. *See* Defs' Ex. M. Plaintiff is treated differently than similarly situated Muslim inmates by being denied the ability to congregate with other inmates who practice Sabeanism.

Further, according to the rule concerning Religious Rules and Practices, Rule number FLX 5360.09(C), "It is the policy of this Complex to extend to inmates the greatest amount of freedom and opportunity for pursuing individual religious beliefs and practices[.]" Defs' Ex. L. at 2. Plaintiff, however, is not being afforded such freedom and is thus being treated differently than similarly situated inmates of other religions. *See Runningbird v. Weber*, 198 F. App'x. 576, 578 (8th Cir. 2006) (holding that to assert an equal protection claim based on the suspect classification of religion, an inmate must show that he is "denied a reasonable opportunity to pursue [his] faith as compared to inmates of other religions[.]").

Moreover, Defendants fail to allege that the disparate treatment regarding Plaintiff's exercise of his religion meets a legitimate penal interest. *See* Defs' Mot. at 35. *See Rouse v. Benson*,

193 F.3d 936, 942 (8th Cir. 1999) ("[P]rison officials may restrict the religious practices of inmates only if such deprivation is necessary to further legitimate penological interests." (citation omitted)).

### C.  First Amendment Claims.

Defendants argue that Plaintiff's claims that his First Amendment rights to free exercise of religion, to associate and communicate, and to be free from retaliation should be dismissed under Rule 12(b)(6). Defendants specifically argue that Plaintiff has not shown there is not a rational basis for the restrictions on his First Amendment rights. *See* Defs' Mot. at 16-17, 21. Defendants do not, however, address Plaintiff's claims under the RFRA, and nonetheless, Plaintiff has pleaded sufficient facts to make out plausible First Amendment violations.

### i.   Free exercise claim under the First Amendment and RFRA

Inmates must be provided with "the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). To state a free exercise claim, the plaintiff must show that prison restrictions "substantially burdened . . . sincerely-held religious beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Prison officials may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Id. "*The burden then returns to the prisoner to 'show that these articulated concerns were irrational.'" *Id.* at 1218 n.2 (citation omitted).

To succeed on a RFRA claim, a plaintiff must show that "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312-13 (10th Cir. 2010); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1140 (10th Cir. 2013) (en banc); *see*

42 U.S.C. §§ 2000bb-1, 2000bb-2. "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Abdulhaseeb*, 600 F.3d at 1316 (internal quotation marks omitted). Further, as recently held by the Supreme Court in *Tanzin v. Tanvir*, 141 S.Ct. 486 (2020), the RFRA authorizes money damages.

Here, in Claim 3, Plaintiff states that Defendants have substantially burdened his right to free exercise of religion under the First Amendment and the RFRA by refusing him pastoral visits, confiscating his religious material and text, and refusing to recognize his religion and allow him to congregate with other Sabeans. Compl. at ¶¶ 7, 212. Pastor Victor Greig is particularly well-suited to provide religious assistance to Plaintiff and Defendants have not produced another Sabean minister who could assist Plaintiff with his religious beliefs, but have steadfastly refused all attempts of Pastor Greig to provide pastoral care to Plaintiff. *See*, Plaintiff's Ex. D. Greig Rejection Documents. Moreover, the denial of his ability to congregate with other Sabeans substantially burdens his ability to practice his religion. *Cf. Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993) (finding that the opportunity to engage in private prayer was not an adequate alternative to denial of access to an Orthodox Jewish rabbi, denial of the ability to congregate with other Orthodox Jews for prayer and discussion, and denial of a kosher diet.).

In addition, although Defendants only focus on the denial of pastoral visits by a Sabean minister, it is not merely Defendants' restrictions on Plaintiff's ability to visit with a minister of his religion that is the basis of his claim. *See* Defs' Mot. at 25-26. Rather, it is the totality of restrictions on his free exercise of Sabeanism that violates his constitutional and statutory rights because the impact of the multiple restrictions limited any reasonable opportunity for him to

21

practice his sincerely held faith.  *Cf. Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir.1991) (per

curiam) (holding that failure to provide Unitarian Universalist chaplain did not violate Free

Exercise Clause where inmate had reasonable opportunity to exercise his faith).

Defendants do not state any legitimate penal interest that is served by confiscating

Plaintiff's religious materials, including his Holy Book. Nor do they allege any rational basis for

refusing to allow Plaintiff to congregate with others of the same faith. Defendants only generally

argue abstractly that his pastor was one of his "cohorts," but provide no specific reason to justify

the restriction on his visits. *See* Defs' Mot. at 25-26. Conjecture and mere hypotheticals do not

represent a valid basis for restricting Plaintiff's constitutional rights or show how the restrictions

serve any legitimate penological interests.

Furthermore, with respect to Plaintiff's arguments under the RFRA, Defendants have not

shown or alleged how the religious restrictions Plaintiff suffers are the least restrictive means to

achieve a compelling government interest. *See United States v. Ali*, 682 F.3d 705, 709 (8th Cir.

2012) (quotations omitted) (explaining that the RFRA, enacted in 1993, amended all federal laws,

including criminal laws, to include a statutory exemption from any requirement that substantially

burdens a person's exercise of religion unless that requirement is the least restrictive means to

achieve a compelling government interest.").

### ii.  First Amendment right of association.

Plaintiff's fourth cause of action under the First Amendment is that his freedom to

associate has been violated because Defendants have placed prolonged restrictions on his ability

to communicate and visit with his immediate and known family members, and such restrictions

have caused him irreparable harm. Compl. at ¶¶ 218-19. Although Defendants broadly state

Plaintiff has inappropriately used social communications, they do not specifically allege that his family visitations were the cause of such alleged behavior. And as such, Defendants cannot state a rational basis or causal link between the limitations on Plaintiff's family visits and the alleged behavior BOP wishes to restrict. *See* Defs' Mot. at 19-22.

Incarcerated persons do not forfeit their First Amendment rights to communicate with family and friends. *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir.1975). "[T]here is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Johnson v. Galli*, 596 F.Supp. 135, 138 (D. Nev. 1984). Defendants now claim Plaintiff has no family restrictions on his social communications, however, Plaintiff he has yet to receive one social visit since 2015, which has caused Plaintiff immeasurable harm.

As the Supreme Court held in *Turner v. Safley*, 482 U.S. 78, 95-96 (1987), limits on inmates' rights are valid only if "reasonably related to legitimate penological interests." 482 U.S. at 89. And in *Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), the Court confirmed *Turner* and indicated that limits on family visits with a prisoner may violate that rule if "permanent or for a [long] period" or if "applied in an arbitrary manner." 539 U.S. at 137.

In this case, Defendants do not explain how prolonged limitations on Plaintiff's visitation and correspondence with known and immediate family members serves the alleged purpose of preventing him from communicating with others or threatening BOP staff. *See* Defs' Mot. at 20. Instead, Defendants vaguely and broadly contend that his "communications may have a dangerous impact on those who continue to idolize him," but do not state how restrictions on family visitation and correspondence serve the purpose of preventing such impact. *See id.* Further, the restrictions

were applied in an arbitrary manner, as shown by the unexplained lifting of certain restrictions on

December 2, 2021, in response to Plaintiff's filing this Complaint.

### iii. Retaliation claim.

Plaintiff submits that he has endured years of retaliatory behavior from Defendants

as a result of his participation in litigation against the BOP and his practice of Sabeanism. Compl.

at ¶ 30. Specifically, Plaintiff alleges that, after a series of challenges to administrative actions

taken against him in 2019 and 2020, he sought to send funds from his personal inmate trust account

to his attorney, but Defendant BOP refused to initiate the proper paperwork, and he maintains that

Defendants purposefully and maliciously retaliated against him by encumbering such funds.

Compl. at ¶¶ 187-194; Plaintiff's Ex. L. Notice of Encumbrance.

Plaintiff additionally asserts that receiving a multitude of violations and incident reports

for minor, improper or exaggerated infractions has negatively impacted his ability to engage in

correspondence and receive the benefit of family and legal visitations, thus causing him undue

harm. Plaintiff maintains that such actions constitute punishment and retaliation against Plaintiff

for vigorously and continuously seeking administrative remedies, of which Defendants were duly

noticed of orally and verbally, appealing administrative decisions, and exercising his right to

access the courts despite being impeded by Defendants. Compl. at ¶ 47; Plaintiff's Ex. M. 2020

Request for Administrative Remedy Forms. Plaintiff further maintains that even if all the

administrative remedies are not fully exhausted, Defendants were well aware of the nature of the

alleged wrongs and were continually put on notice by Plaintiff to investigate and address the

grievance. *See Carl Hall v. John Oliver & The Federal Bureau of Prisons*, No. 17-1270 (D.C. No.

1:15-CV-01949-RBJ-MJW) (D. Colo.).

As detailed below, Plaintiff has stated a plausible claim for relief.

"An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted); *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (holding that "to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action.").

"Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 fn. 1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."); *Leverington v. City of Colorado Springs*, 643 F.3d 719, 729 (10th Cir.2011); *Rocha v. Zavaras*, 443 Fed.Appx. 316, 318 (10th Cir.2011).

Moreover, even if this court finds that Plaintiff does not have a *Bivens* claim for damages based on a violation of his First Amendment right to be free from retaliation, he still may seek declaratory and injunctive relief. *See Corr. Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (federal inmate who may not assert *Bivens* claim for damages against private prison contractor may bring suit in federal court for injunctive relief and file grievances using Bureau of Prisons administrative remedy program); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-33 (10th Cir.2005) (federal courts have jurisdiction to issue injunctions to protect rights safeguarded by the Constitution).

Here, Defendants do not contend Plaintiff's challenges to administrative actions were not protected conduct. Nor do Defendants assert that Plaintiff was not subjected to adverse actions by the restrictions on visitation and correspondence noted above, or by interfering with the use of his inmate trust funds. *See* Defs' Mot. at 31-32. Further, the causal connection between the protected conduct and the adverse actions is demonstrated by the timing of the adverse actions, which occurred following Plaintiff asserting his rights through litigation and administrative remedies, and incident reports against Plaintiff initiated by Defendants. *Cf. Williams v. Meese*, 926 F.2d 994, 998 (10th Cir.1991) (federal prisoner alleging job transfer in retaliation for filing grievances states a claim) (citing *Frazier v. Dubois*, 922 F.2d 560, 561–62 (10th Cir.1990) (prison officials do not have discretion to punish federal prisoner for exercising First Amendment rights).

Plaintiff maintains that following the April 2015 incident involving SIS Tech Santistevan, he was subjected to increased retaliation and restrictions. Even in Defendant's Exhibit D, Staff Representative Lee noted he did not believe Plaintiff was going to hurt the SIS Tech. Plaintiff admitted he made the statement and that he was upset, as well as he understood that he should not have made the statement. Plaintiff proffers there is a causal connection between voicing his grievances, initiating litigations, defending against bogus incident reports, and Defendants retaliatory conduct.

Retaliation is not a novel concept among the ranks of Defendants and has been noted and documented in an independent investigation of the BOP. *See*, Plaintiff's Ex. F. at 1, 1/2/2019 Subcommittee on National Security Independent Investigations and Employee Discipline at the Bureau of Prisons Memorandum (Majority Staff stating there exists an opportunity for "misconduct to be glossed over and retaliation and intimidation to prevail.").

Additionally, there was no basis for Defendants to deprive Plaintiff of his Holy Book when it was deemed contraband and confiscated by Defendant Lewis-Hicks on December 14, 2018, which has yet to be returned to Plaintiff. Compl. at ¶ 145; *See,* Plaintiff's Ex. B.  Plaintiff, therefore, maintains the confiscation of his Holy Book and the multitude of overly restrictive conditions on his privileges is due, in part, to Defendant Lewis-Hicks' 2016 Incident Reports related to whether Plaintiff was communicating in code being expunged by the Disciplinary Hearing Officer. Plaintiff's Ex. E. 2016-2017 Defendant Lewis-Hicks Incident Report Documents.

Plaintiff has outwardly and openly complained of his constitutional rights being violated and Defendant's vehement refusal to remedy the harms. Defendants have thus forced him to endure these adverse actions. Plaintiff maintains that Defendants did so to harass and punish him for seeking to exercise his constitutional rights.

### D.  Eighth Amendment claim

Plaintiff has pleaded sufficient facts to state a plausible claim for relief under the Eighth Amendment. He specifically claimed that he has suffered cruel and unusual punishment because, among other things, he has been indeterminately confined to ADX and denied access to his family and religion. Compl. at ¶ 227. He additionally claimed that the continued and long-standing restrictions and conditions of confinement have resulted in a denial of basic life necessities. Compl. at ¶ 228.

In particular, Plaintiff alleged that he has been continually subject to solitary confinement and that he has minimal contact with others, or no contact at all. Compl. at ¶¶ 29-30. He is confined to his 87.5 square foot cell 23 hours a day for at least five days a week and the other two days he is confined for 24 hours a day. Compl. at ¶ 31. But Plaintiff maintains also that he has frequently

received only two hours of outside exercise a week and that he has existed for weeks without going outside at all. Compl. at ¶¶ 38-40. As Plaintiff stated in his complaint, "[b]y continual placement in solitary confinement, Defendants violated 28 C.F.R. 541.41(b) by subjecting Plaintiff to indefinite confinement in segregation and imposing atypical and significant hardships. Compl. at ¶ 41.

Further, Plaintiff must consume all meals within his cell and when he is removed from his cell he requires belly chains, leg irons, and two escorts. Compl. at ¶¶ 32-33. He suffers from Chronic Acute Angiodema and is not permitted to keep his medication in his cell and must rely on Defendants for assistance when he has Angiodema attacks. Compl. at¶¶ 35-37. Further, Defendants have demonstrated deliberate medical indifference to his medical needs and Plaintiff's elder status makes him particularly susceptible to various harms, which are triggered and exacerbated by the conditions of confinement he is subjected to. Compl. at ¶¶ 34-35.

Defendants claim in their Motion to Dismiss that Plaintiff is no longer subject to the confinements noted above, as Plaintiff is currently housed in the K-B unit, after being subject to solitary confinement in ADX since 2006. However, the fact that a requirement of being placed in the K-B unit, according to Defendant's Exhibit N, High Security Adult Alternative Housing Program, is a minimum of 12 months good conduct from the date of the most recent incident while housed in one of the General Population Units.

In addition to several other requirements, a notable factor for placement in the K-B unit is to demonstrate the inmate can function in a less secure unit without posing a risk to institutional security and good order. *See*, Defendant's Ex. N. at 2. The fact that Defendant BOP permitted Plaintiff to participate in the program, which is subject to change and at the discretion of

Defendants, is proof enough that the onerous and unconstitutional restrictions on his social and legal privileges are unwarranted and, indeed, retaliatory. Moreover, transfer from the program can be accomplished by "review" without notice to Plaintiff, without Counsel, and without witnesses *Id.* at 5.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." *Smith v. Allbaugh*, 987 F.3d 906, 910 (10th Cir. 2021) (internal quotation marks and citations omitted). "Only deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citation omitted).

To state a claim of cruel and unusual punishment, the plaintiff must show "deliberate indifference" by the defendants, which contains an objective and subjective component. *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To meet the objective component, the plaintiff must allege facts establishing that he is "incarcerated under conditions posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834; *Martinez*, 430 F.3d at 1304. For the subjective component, the plaintiff must show that each defendant was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837; *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks.").

Thus, when construed liberally in his favor, Plaintiff plausibly claims that, by enduring the conditions mentioned above over the past 16 years, he has been sufficiently deprived of mental

and physical health and has been exposed to a substantial risk of serious harm. *See McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979) ("[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise, may make out an eighth amendment violation. The district court therefore erred in dismissing the complaint for failure to state a claim upon which relief may be granted."). Here, it is incomprehensible that Defendants were not aware of the risks of keeping Plaintiff in continuous solitary confinement under the conditions mentioned above for the egregiously long duration of time that Plaintiff has resided at ADX.

Moreover, Plaintiff has been denied out-of-cell recreation and not provided any alternatives, even though it is well known the benefits of outdoor exercise and Plaintiff is supposed to be outside for at least one hour a day, five days a week. *Cf. Hewitt v. Henderson*, 271 F. App'x 426, 427 (5th Cir. 2008) (finding that where the plaintiff alleged that he suffered psychological and physical damage because defendants denied out-of-cell recreation segregation, that he could potentially state a claim depending on the size of his cell, "the degree to which in-cell exercise in fact was practicable," whether he was given a regular exercise alternative, whether he was exposed "to fresh air and sunlight during his recreation periods[,]" the amount of time he was required to spend in his cell each day, the prospective length of his incarceration, and the amount of time he "already has been in administrative segregation."); *see also Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir.) (one year in solitary confinement resulted in a deprivation of a liberty interest), cert. denied, 519 U.S. 952 (1996); *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding five hundred days in solitary confinement under harsh conditions was an atypical and

significant hardship to which due process attached). Here, with prospective length of incarceration, Plaintiff was sentenced to 135 years in prison and is not expected to ever be released from prison.

## IV.   Precedent allows *Bivens*' claims in the Fifth Amendment and Eighth Amendment contexts.

"[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done*." Davis v. Passman*, 442 U.S. 228, 245 (1979) (internal quotation marks and citation omitted). Pursuant to *Bivens*, "in appropriate circumstances a federal district court may provide relief in damages for the violation of constitutional rights if there are 'no special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Butz v. Economou*, 438 U.S., at 504).

*Bivens* provides a remedy for constitutional violations committed by federal actors in limited circumstances. *Bivens v. Six Unknown Named Agents of Federal Bureau Narcotics*, 403 U.S. 388 (1971). Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend Bivens actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200. However, the Supreme Court has recognized an implied private action against federal officials in certain situations: (1) the Fourth Amendment; (2) the Fifth Amendment; and (3) the Eighth Amendment. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980); *Farmer v. Brennan*, 511 U.S. 825 (1994).

Plaintiff has alleged due process and cruel and unusual punishment claims, which come within the ambit of *Bivens.* In addition, Plaintiff claims that he is being denied access to the courts,

while also a Sixth Amendment claim, is a Fifth Amendment Due Process claim as well. Similarly, his First Amendment claims are likewise incorporated into his Fifth Amendment Due Process claims. Specifically, he argues that under both amendments, he is denied the liberty to associate with his family and friends and to practice his religion. Such restrictions not only violate the First Amendment, but as already mentioned, present an atypical and significant hardship that exposes him to a substantial risk of harm. *See Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)) (declining to extend *Bivens* to access to the court claims).

## V.     Defendants are not entitled to qualified immunity.

Defendants claim there has been no violation of established law, and hence, they are entitled to qualified immunity. Defs' Mot. at 7, 18-19, 33-34, 37. Defendants' argument fails. As thoroughly detailed above, Plaintiff has stated a plausible claim for relief for each of the causes of actions listed in his complaint. What is more, Plaintiff's claims implicate violations of clearly established law and such law was so established at the time Defendants violated the law.

Qualified immunity protects government officials from individual liability under *Bivens* unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting that qualified immunity analysis is identical under 42 U.S.C. § 1983 and *Bivens*); *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("Qualified immunity protects individual state actors from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

When a defendant raises qualified immunity defense, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue. *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). The court may consider either prong of the qualified immunity test first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.  Claim 1: Violation of Sixth Amendment and Right to Access the Courts.

As detailed above, Defendants violated Plaintiff's constitutional right of access to the courts of which a reasonable person would have known. Defendants' do not specifically argue that a reasonable person would not have known that an inmate has a fundamental right to access the courts. Further, there is no doubt the right violated was clearly established at the time of Defendants conduct. *See Boivin*, 225 F.3d at 42. Nor is there any doubt Plaintiff's complaint outlined the unconstitutional actions Defendants took to infringe on his rights. The facts in support of this claim include, but are not limited to, the following:

- On January 22, 2018, during a legal visit Defendant Lewis-Hicks removed legal correspondence from the hand of Plaintiff's counsel and read the confidential communications out loud. Defendant took a photo of the letter, which was never returned to Plaintiff or his counsel. Comp. ¶ 108.

- On or around June of 2018, Plaintiff's counsel sent legal mail to Plaintiff, which was opened and read by prison staff. Compl. ¶¶ 121-22.

- On or about July of 2018, the Plaintiff was denied a legal visit by his attorney after his counsel was interrogated by Defendant Lewis-Hicks. Compl. ¶¶ 123-125.

- In August 2018, Defendant Matevousian removed all of Plaintiff's counsel's ability to communicate with him. Compl. ¶ 131.

- On January 28, 2019, Plaintiff's counsel received correspondence from Defendant Matevousian upholding and continuing Plaintiff's ability to communicate with his counsel. Compl. ¶ 146.

- In June of 2019, legal mail was returned to Plaintiff's counsel and Plaintiff was denied access to this legal mail. Compl. ¶¶ 173-176.

- Defendant Fox interfered with Plaintiff's ability to transfer funds to his counsel. Compl. ¶¶ 190-193.

**B.  Claim 2: Due Process and Equal Protection.**

As explained previously, Plaintiff has stated a plausible claim for relief under the Due Process Clause and the Equal Protection Clause. The actions of Defendants caused atypical and significant hardship and the procedures available to Plaintiff were not sufficient to redress these matters. *See supra* III.B.i. He further suffered a violation of equal protection because of disparate treatment with other inmates with respect to his religious practices. *See supra* III.B.ii.

Plaintiff has pleaded facts, as demonstrated above in Section III, which plausibly show that Defendants' actions violated his constitutional rights. Those facts, also discussed above, include but are not limited to the following:

- He was denied pastoral care through the minister of his choice; suffered restrictions to his correspondence and visitation privileges; interference with his legal mail and communicating with his lawyer; and was deprived of his Holy Book and other

personal items, which included photo albums, books, and a Sudanese language book. Comp. at ¶¶ 63, 66, 70-71, 75-77, 87, 88, 93, 132, 162, 166, 186.

- He is being confined to his cell indefinitely. Compl. ¶¶ 29, 31.

- He is being denied access to the courts. Specifically, Defendant Lewis-Hicks has interfered with Plaintiff's ability to access his counsel's services. Compl. ¶¶ 123-126.

- Defendant Matevousian refused to acknowledge Plaintiff's religion of choice and prevented him from possessing scriptures, Holy Books, photos related to Sabeanism, or congregating with other Sabean inmates. Compl. at ¶¶ 135-137.

- Defendant Lewis-Hicks took Plaintiff's Holy Book and refused to return it. Comp. ¶¶ 132, 143-144.

- Defendant Lewis-Hicks' actions have substantially burdened Plaintiff's ability to participate in prayer and have deprived him of legal benefits of interacting with his counsel. Compl. ¶¶ 91-92.

Defendants' conduct violated clearly established rights at the relevant times in question. *See Sandin*, 515 U.S. 472; *Penrod*, 94 F.3d 1399; *Marshall*, 421 Fed.Appx. 832, (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

### C.  Claims 3-5: First Amendment Violations.

The rights of inmates to "the reasonable opportunity to pursue their sincerely-held religious beliefs" is a clearly established right. *See Gallagher*, 587 F.3d at 1069. Plaintiff discusses this at length in Section III.C.i. The right of inmates to communicate with family and friends is likewise a clearly established right when a penal institution cannot identify any legitimate reason to limit

such associations. *See Turner*, 482 U.S. 78; *Overton v. Bazzetta*, 539 U.S. 126; *Morgan*, 526 F.2d 221. *See supra* Section III.C.ii. In addition, it is clearly established that inmates have a right to be free of retaliation for the exercise of their constitutional rights. *See Peterson*, 149 F.3d 1140. *See supra* Section III.C.iii.

Under the favorable standard to Plaintiff this court must employ in evaluating whether Defendants' Motion to Dismiss may prevail, Plaintiff has plausibly stated a claim for relief and all of these rights under the First Amendment were clearly established at the time of the conduct in issue. *See supra* Section III.C.

**D.  Claim 6: Eighth Amendment.**

Finally, Defendants are not entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim because, as also discussed above in Section III.D., he has been indeterminately confined to ADX and denied access to his family and religion. Compl. at ¶ 227. The continued and long-standing restrictions and conditions of confinement have resulted in a denial of basic life necessities. Compl. at ¶ 228. He has been continually subject to solitary confinement and been denied regular exercise. Compl. at ¶¶ 29-30, 38-40.

As specifically pleaded in his complaint, Defendant Matevousian was at all relevant times responsible for all administrative decisions related to Plaintiff's ability to be placed in a less restrictive unit and the decisions regarding Plaintiff's restrictions. Compl. at ¶¶ 13, 138-139. Defendant Matevousian was also responsible for the decision not to recognize Sabeanism, which contributed and exacerbated the isolation Plaintiff suffered and deprived him of the benefit of participating in his spiritual community. Compl. ¶¶ 135-137.

Defendant Matevousian and Fox were at all times responsible for the administration, operation, maintenance, policies, procedures, and functions at the facility, including decisions regarding an inmate's ability to participate in the Step-Down program and be placed in a less restrictive unit. Defendant Tuttoilmondo was responsible for directing and managing Plaintiff's housing unit and is responsible for the total administration of the unit as well as the planning, development, and implementation of individual programs, and Defendant Synsvoll oversaw the legal operations associated with the facility and provides advice and guidance to all levels of staff.

Because the Eighth Amendment requires that prison officials take reasonable measures to guarantee the health and safety of inmates and to avoid subjecting inmates to substantial risk of serious harm, it is evident that Defendants have violated clearly established law, as established above, and such law was precedent at the time the violations occurred. *See, e.g.*, *Wilson*, 501 U.S. 294.

## CONCLUSION

For the reasons stated above, this court should deny Defendants' motion to dismiss.

Respectfully Submitted,

**LAW OFFICES OF VICTORIA BROUSSARD**
P.O. Box 538
Katy, Texas 77492
(512) 963-7094 Phone
(512) 672-7052 Fax
victoria@broussardlegal.com

*Victoria Broussard*

_____

Victoria Broussard
SBN: 24053882
**ATTORNEY FOR PLAINTIFF**

37

**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on April 25, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to Counsel for Defendants:

Susan Prose
Assistant United States Attorney

*Victoria Broussard*

_____
Victoria Broussard